IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN COKER-McCONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:15-cv-768-GMB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 24, 2012, Plaintiff Susan Coker-McConnell ("Coker")[1] applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively.  Coker's claims were denied at the initial administrative level.  Coker then requested and received a hearing before an Administrative Law Judge ("ALJ").  On December 16, 2013, the ALJ held a hearing, and on April 10, 2014, denied Coker's claims.  Coker requested a review of the ALJ's decision by the Appeals Council ("AC") and that request was denied on August 21, 2015.  Thus, on that date, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

The case is now before the court for review in accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court Middle District of Alabama, the parties have consented to

---

[1] In her administrative hearing, the Plaintiff stated that she prefers "Coker." R. 41–42.

have the undersigned United States Magistrate Judge conduct all proceedings in this case and enter a final judgment.  Based on the court's review of the record and the relevant law, the court finds that the decision of the Commissioner is due to be AFFIRMED.

## I.  STANDARD OF REVIEW

The court reviews a social security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, in such a case, reversal is not warranted even if the court itself would have reached a contrary result as the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

"Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  It has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  This standard is met "if a reasonable person would accept the evidence in the record as adequate to support

2

the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The Commissioner's conclusions of law are not presumed valid, and the court reviews such conclusions *de novo*. *See Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  The application of incorrect legal standards is "grounds not for remand, but for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1989).  Additionally, the court must reverse the Commissioner if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Martin*, 894 F.2d at 1529.

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

3

Coker bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a) (2012).  The Commissioner must determine in sequence:

(1)     Is the claimant presently engaged in substantial gainful activity?
(2)     Is the claimant's impairment(s) severe?
(3)     Does the claimant's impairment satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)     Does the claimant have the residual functional capacity to perform her former occupation?
(5)     Can the claimant perform other work given her residual functional capacity, age, education, and work experience?

*Frame v. Comm'r, Soc. Sec. Admin.*, 596 F.2d 908, 910 (11th Cir. 2015).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  DISCUSSION

### A.     Factual Background

Coker was forty years old at the time of the ALJ's decision. R. 42.  Coker completed high school and obtained a certificate after taking special education classes. R. 44.  Coker

has been in special education classes since the third grade. R. 251. Her past work experience includes employment as a security guard and an inserter of promotional material. R. 56. Coker alleges that she became disabled on May 1, 2012, due to arthritis in her back and foot, diabetes, carpal tunnel, high blood pressure, and depression. R. 173.

Following an administrative hearing, the ALJ found that Coker has the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): low back pain with a history of arthritis; major depressive disorder, moderate; personality disorder; and borderline intellectual functioning. R. 19. The ALJ found that Coker suffered from several non-severe impairments, including diabetes, carpal tunnel syndrome, essential hypertension, gastroesophageal reflux disorder ("GERD"), and mild plantar fasciitis in her left foot. R. 20. However, the ALJ found that these impairments were non-severe because they were either controlled with medication or "have not caused persistent functional limitations for any period of twelve continuous months." R. 20.

After considering the entire record, the ALJ found, at step three of the five-step analysis, that Coker did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 20. At step four, the ALJ concluded that Coker is capable of performing past relevant work as an inserter of promotional material. R. 29–30. The ALJ further found, at step five, that Coker has the residual functional capacity to perform light work, "except that she requires the option to alternate between positions at will; cannot climb ladders, ropes, or scaffolds; cannot kneel; and cannot crawl." R. 23. Additionally, the ALJ concluded that Coker should avoid unprotected heights and moving mechanical parts, and should be "limited to simple,

5

routine, and repetitive tasks; simple work-related decisions; and only occasional interaction with supervisors and coworkers and no interaction with the public." R. 23.  Ultimately, the ALJ concluded that Coker was not disabled within the meaning of the Social Security Act from May 1, 2012, her alleged disability onset date, through the date of the ALJ's decision, and denied her claims. R. 30.

**B.    Issues Presented**

Coker raises four arguments in her appeal: (1) her intellectual disability meets Listing 12.05(c); (2) the ALJ committed error in affording examining psychologist Dr. Peggy Thornton's opinion "little weight"; (3) the ALJ committed error in affording reviewing psychiatrist Dr. Dale Leonard's opinion "some weight"; and (4) the ALJ failed to fully and fairly develop the record. Doc. 15.  After careful consideration of Coker's arguments, the ALJ's opinion, and the record in this case, the court finds that the Commissioner's decision is supported by substantial evidence and was based upon the proper legal standards.  Therefore, the Commissioner's decision is due to be affirmed.

*1.    Listing 12.05(c)*

Under 20 C.F.R. § 404, Listing 12.05 establishes the requirements for a finding of disability due to intellectual disability, which is considered at step three of the analysis outlined above. 20 C.F.R. § 404, subpt. P, app. 1, § 12.00(A).  The ALJ found that the criteria for Listing 12.05(c) were not met because Coker did not "have a valid verbal, performance, or full scale IQ of 60 through 70." R. 22.

Listing 12.05 defines an intellectual disability as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the

development period," and requires onset of the impairment before age 22. 20 C.F.R. § 404, subpt. P, app. 1, § 12.05.  To meet the requirements of Listing 12.05(c), Coker must show that (1) she has a valid verbal, performance, or full scale IQ of 60 through 70; and (2) she has an additional physical or mental impairment imposing additional and significant work-related limitations. *See id.*; *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 872 (11th Cir. 2014).  To meet the second requirement of 12.05(c), one or more additional impairments must be "'severe' in that they 'significantly limit[] [a claimant's] physical or mental ability to do basic work activities.'" *Perkins*, 553 F. App'x at 872 (internal citations omitted).  At issue here is whether the ALJ erred in finding Coker's IQ scores, recorded during an examination by Dr. Thornton, invalid.  The court finds that the ALJ's determination was based on substantial evidence and was not in error.

Dr. Thornton examined Coker on November 16, 2011. Doc. 17-7 at 251.  Dr. Thornton administered the Wechsler Adult Intelligence Scale–Fourth Edition but deemed the test scores "provisionally valid" due to a lack of accompanying school records. Doc. 17-7 at 252.  Coker received a verbal comprehension IQ score of 66, a perceptual reasoning score of 71, a working memory score of 60, a processing speed score of 79, and a full scale IQ score of 63. Doc. 17-7 at 252.  Dr. Thornton diagnosed Coker with major depressive disorder, which she reported to be under control with medication, as well as an "Extremely Low Range of Intellectual Functioning[] (Provisional)." Doc. 17-7 at 252.  Dr. Thornton concluded that Coker "would not be able to make appropriate work decisions." Doc. 17-7 at 252.

The Eleventh Circuit has held that even a "valid IQ score is not conclusive of [intellectual disability] when the IQ score is inconsistent with other evidence in the record about claimant's daily activities." *Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006). "[T]he ALJ [is] not required to find that [the claimant] was [intellectually disabled] based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986). A diagnosis by an examining physician alone is insufficient to meet Listing 12.05(c), "as a claimant must show a 'medically determinable impairment[] that satisfies *all* of the criteria of the listing.'" *Perkins*, 553 F. App'x at 873 (quoting 20 C.F.R. § 416.925(d)).

Here, the ALJ's conclusion that the IQ scores are not valid was based upon substantial evidence. Specifically, the ALJ found that Coker's work history,[2] daily activities, and diagnosis of borderline intellectual functioning[3] are inconsistent with the IQ scores and demonstrate that Coker "is capable of functioning above a mild mental retardation level."[4] R. 23. Borderline intellectual functioning and intellectual disability are mutually exclusive diagnoses. *See, e.g.*, *Jordan v. Comm'r, Soc. Sec. Admin.*, 470 F. App'x 766, 769–70 (11th Cir. 2012). The ALJ noted that Coker has lived alone for years, has

---

[2] Coker previously worked as a security guard for three-and-a-half years before being terminated for reasons not related to her alleged disability. R. 44–47, 174–75, 251. She had also worked as an inserter for a local newspaper for three-and-a-half years. R. 251.

[3] Coker was diagnosed with borderline intellectual functioning at East Alabama Mental Health Center, where she was treated by a psychiatrist and counselor for depression from 1999 to 2013. R. 262–442, 493–511.

[4] The term "mental retardation" has been replaced with "intellectual disability" by the Social Security Administration. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 n.2 (11th Cir. 2015).

managed her own finances, has taken care of a pet, and has attended church every week. R. 23.  The ALJ also pointed to the fact that Coker interacts with others regularly, goes shopping, drives, and enjoys doing puzzles and coloring, "which indicates she is capable of performing simple tasks, such as tending to her personal care and performing light housework." R. 21.

In *Harris v. Commissioner, Social Security Administration*, 330 F. App'x 813 (11th Cir. 2009), the Eleventh Circuit held that the ALJ did not err in rejecting a consultative psychologist's opinion and ultimately finding that the claimant did not meet the requirements of Listing 12.05. *See id at* 815–16.  The court focused on the fact that the claimant was diagnosed with borderline intellectual functioning, performed well in special education classes, and had several prior jobs. *See id.* at 815.  Additionally, the court relied on the claimant's ability to carry out daily activities—dressing and bathing, taking care of his personal needs, managing money, reading, communicating, and performing simple math. *See id.*  Coker was similarly diagnosed with borderline intellectual functioning, attended special education classes, and has held several jobs. R. 21–23, 26–28, 56, 251. Moreover, she is able to take care of herself and her personal needs, manage her finances, communicate with others, and perform simple math. R. 21–23.  Like in *Harris*, the ALJ here properly relied on those facts to determine that Coker's IQ scores were invalid. R. 23; *see also Outlaw*, 197 F. App'x at 827 (affirming ALJ's finding of no disability where the claimant's IQ scores were above 70, he was diagnosed with borderline intellectual functioning, and his "long work history in semi-skilled positions and daily activities were inconsistent with his adult IQ scores"); *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th

Cir. 2008) (finding that a claimant did not meet Listing 12.05(c) because her score was inconsistent with her daily activities and her schizophrenia was controlled with medication).    Additionally, the ALJ found Coker's testimony and allegations "only partially credible," and determinations of credibility "are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Coker argues that *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001), established that IQ scores create a rebuttable presumption of a constant IQ score throughout a claimant's life.    *Hodges* dealt with the question of whether a claimant's IQ assessed after the age of 22 establishes a presumption of a manifestation of deficits in adaptive functioning before the age of 22, one of Listing 12.05(c)'s requirements. *Id.* at 1269 (holding that it was error for the ALJ to fail to presume from an IQ test taken after the age of 22 that there was a deficit in adaptive functioning prior to the age of 22).    This is not the issue before the court.    The issue here is whether the ALJ erred in finding Coker's IQ scores invalid and whether Coker has a physical or other mental impairment imposing an additional and significant work-related limitation.    Therefore, the *Hodges* presumption does not apply.[5]

In sum, Coker has a demonstrated ability of carrying out daily activities, has been able to take care of herself and her personal finances, is able to read, communicate, and perform simple math, has a diagnosis of borderline intellectual functioning, and has an extensive work history.    The court cannot say that, when faced with this evidence, a

---

[5] Moreover, if the *Hodges* presumption were at issue, the court would likely find that there was enough evidence for the presumption to be rebutted.

reasonable person would not find adequate support in the record for the ALJ's conclusion that Coker's IQ scores were invalid and that she did not have the requisite work-related physical or mental limitations to meet the requirements of Listing 12.05(c). Thus, the court must uphold the ALJ's conclusion.

### 2.  *Dr. Thornton's Opinion*

Coker argues that the "ALJ erroneously rejected examining psychologist, Dr. Thornton's opinion" and "[i]n so doing she violated Social Security's Regulations and Rulings regarding evaluation of medical source." Doc. 15 at 12–13.  Specifically, Coker points to Dr. Thornton's opinion that Coker would not be able to manage benefits should she receive them and that Coker "would not be able to make appropriate work decisions."[6] R. 26–27.

The ALJ gave Dr. Thornton's opinion "little weight" because it was partially based on the IQ scores that the ALJ found to be invalid, because Dr. Thornton did not elaborate on her opinion, and because Dr. Thornton had not had the opportunity to review the more recent mental health records that the ALJ considered. R. 26–27.  Finding that Dr. Thornton's opinion was "not consistent with the record as a whole," the ALJ considered the fact that Coker's depression has been controlled with medication, that Coker is capable of performing her daily activities, that Coker has lived alone, and that Coker takes care of her finances, attends church weekly, and interacts with others regularly. R. 27.

---

[6] The ALJ did not specifically address Dr. Thornton's opinion that Coker would not be able to manage benefits should she receive them, which Coker raises in her brief. *See* Doc. 15 at 11; R. 26–27.  The ALJ noted, however, that this opinion has no bearing on whether Coker is disabled.  Therefore, the ALJ did not err to the extent she failed to address this opinion.

Additionally, the ALJ noted that Dr. Thornton found the IQ scores only "provisionally valid." R. 27.

"The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (internal citation omitted). Moreover, the opinions of one-time examiners are not entitled to deference. *McSwain v. Bowen*, 914 F.2d 617, 619 (11th Cir. 1987). Based on the evidence in the record, the court finds that the ALJ's decision to grant Dr. Thornton's opinion "little weight" is based on substantial evidence. In considering Coker's daily activities, work history, social interactions, and mental health history, the ALJ considered the same factors routinely considered by the Eleventh Circuit in social security appeals. *See, e.g.*, *Perkins*, 553 F. App'x at 873–74 (considering the plaintiff's past work, daily activities, and medical history); *Milner*, 275 F. App'x at 948 (daily activities, social functioning, and a mental illness controlled with medication); *Popp*, 779 F.2d at 1500 (declaring that the "ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior"). The ALJ pointed to the fact that Coker lived alone for a period of several years and took care of herself, that she took care of a pet, that she has hobbies, that she attends church, and that she denies any difficulties with social interactions. R. 27. The ALJ also referred to the East Alabama Mental Health Treatment Center Notes, which indicate that Coker's major depressive disorder was controlled for years with medication. R. 27. The court therefore finds that the ALJ did not err by giving Dr. Thornton's opinion little weight.

### 3.    *Dr. Leonard's Opinion*

The ALJ gave "some weight" to Dr. Leonard's opinion that Coker has "moderate limitations and would be capable of performing simple tasks, and appeared able to complete an 8-hour workday," but gave less weight to his opinion that she "would function best with a flexible daily schedule" because she found this opinion to be vague. R. 27–28. Coker appears to be arguing that the ALJ erred in rejecting the part of Dr. Leonard's opinion that she found to be vague and in ultimately construing the "flexible daily schedule" restriction as a factor weighing against approval of Coker's disability claim. Doc. 15 at 13.  Dr. Leonard was a consultant and not a treating or examining physician. R. 28.  Generally, the opinions of non-treating and non-examining physicians are granted less weight than those of examining or treating physicians. *See, e.g.*, *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006).  Moreover, the ALJ articulated a clear and adequate basis for granting this portion of Dr. Leonard's testimony less weight.  Accordingly, the ALJ did not err in granting less weight to the portion of Dr. Leonard's opinion that she found to be vague.

### 4.    *Duty to Develop the Record*

Finally, Coker argues that the ALJ failed to develop a full and fair record. Doc. 15 at 13.  Specifically, she claims that the ALJ should have "cured the record, if she found it incomplete" before granting Dr. Thornton and Dr. Leonard's opinions little weight. Doc. 15 at 14.  Coker quotes Social Security Administration regulations stating that before a determination is made that a claimant is not disabled, "we will develop your complete medical history," and the record "must be complete and detailed enough to allow us to

make a determination about whether you are disabled." Doc. 15 at 14 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d), 404.1513(e), 416.913(e)).   Coker alleges that the ALJ did not fulfill her duty to "scrupulously and conscientiously prove into, inquire of and explore for all of the relevant facts." Doc. 15 at 15 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   Specifically, she claims that the ALJ should have (1) requested clarification from Dr. Thornton and Dr. Leonard, (2) ordered additional consultative examinations, (3) called on a medical expert to testify at the hearing, or (4) obtained additional evidence regarding Coker's education history. Doc. 15 at 16.

The ALJ has a duty to develop a "full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).   Since social security cases are "inquisitorial rather than adversarial," the ALJ has a duty to "investigate the facts and develop the arguments both for and against granting benefits." *See Sims v. Apfel*, 530 U.S. 103, 103–04 (2000). Remand for further development of the record is appropriate where "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).   "Nevertheless, the claimant bears the burden of proving that [s]he is disabled and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276.

The court does not find that there were any evidentiary gaps in the record resulting in unfairness or clear prejudice to Coker.  Coker is essentially claiming that the ALJ should have obtained additional evidence because the evidence on which the ALJ relied was unfavorable to Coker's claim.  This does not equate to the ALJ's failure to satisfy her duty.

14

"The ALJ is required to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed . . . ." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007). The ALJ did so here. The record includes medical records from Mercy Medical Clinic beginning in 2003, as well as mental health treatment records from East Alabama Mental Health Center beginning in 1999. Docs. 17-7 & 17-9. Moreover, the ALJ has investigated the facts and developed the arguments both for and against granting benefits. The ALJ fully evaluated Coker's medical history and each of her purported disabilities. R. 20–29. The ALJ also discussed the evidence that was contrary to her ruling, including Dr. Thornton's opinion (as well as Coker's mental health treatment notes, medical opinions and diagnoses, and Coker's own statements), and fully explained the basis for her conclusions. R. 20–29.

While Coker claims that the ALJ should have sought additional clarification from Drs. Thornton and Leonard and should have ordered additional consultative examinations, "[m]edical sources should be recontacted [only] when the evidence received from that source is inadequate to determine whether the claimant is disabled." *Robinson*, 235 F. App'x at 727. Further, the ALJ only granted Dr. Leonard's opinion "some, but not great weight" due to the vagueness of the term "flexible daily schedule"—the ALJ did not disregard this opinion entirely, and the vocational expert testified to jobs that would allow for a flexible schedule as long as Coker could perform a full eight-hour day. R. 28. There was more than enough evidence in the record from which the ALJ could determine that Coker was not disabled. While Coker may disagree with the ALJ's determination, her determination was based on years of medical records from various physicians and

15

treatment centers, which provided an adequate basis to reach her decision.  The Eleventh Circuit has continually held that the claimant is responsible for producing evidence in support of her claim.  Coker has done so here, but the ALJ considered the evidence and rejected it.  It was not a violation of the ALJ's duty to fail to seek more evidence when an adequate basis for her decision already existed.

Finally, it was not prejudicial for the ALJ to fail to obtain additional evidence regarding Coker's educational history.  First, Coker has failed to demonstrate that the education records, should they be produced, would have impacted Dr. Thornton's opinion such that Dr. Thornton would have labeled the IQ scores "valid" instead of "provisionally valid."  Moreover, because the ALJ provided multiple bases for finding the IQ scores invalid, there is nothing in the record to indicate the ALJ would have ruled differently had the records affirmed Dr. Thornton's opinion.  For these reasons, the court finds that the ALJ met her duty to fully and fairly develop the record.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner denying benefits is AFFIRMED.  A final judgment consistent with this Memorandum Opinion and Order will be entered separately.

DONE this 15th day of September, 2016.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE
